IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| WHITNEY CSUKARDI,<br>*Plaintiff,*<br><br>v.<br><br>PLATINUM CORRAL, LLC,<br>*Defendant.* | CIVIL ACTION NO. 6:16-cv-00064<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This is an Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, discrimination case relating to Plaintiff's employment as a server at Defendant's restaurant. The only issue at stake in this motion to dismiss is whether the arbitration agreement (the "Agreement") between the parties is valid and enforceable. The Agreement is before the Court as an attachment to the motion to dismiss, and the Court may consider the outside document because the dispute relates to jurisdiction.

Plaintiff argues that the signed Agreement is unenforceable and thus that she is not required to arbitrate this dispute. Specifically, Plaintiff argues that: (1) the Agreement was not voluntary, (2) the Agreement is missing material terms, and (3) the Agreement lacks consideration. None of these arguments are persuasive. Thus, the Court will hold that the Agreement is valid and the dispute is subject to arbitration, depriving this Court of jurisdiction under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA"). The Court will dismiss the case and order the Plaintiff to submit her dispute to arbitration.

1

I. **Facts as Alleged**

Plaintiff is an employee of Golden Corral, working in the restaurant as a server. (Dkt. 1 at ¶6).[1] Plaintiff has worked as a server in the restaurant since April 24, 2013. (*Id.* at ¶9). She was diagnosed with multiple sclerosis ("MS"), which is a disability. (*Id.* at ¶10). Defendant knew of Plaintiff's disability, including the fact that she was hospitalized due to a flare up in December 2011. (*Id.* at ¶¶14, 15). Plaintiff's doctors recommended she take a week or two off to recover following the hospitalization. (*Id.* at ¶16). Following her hospitalization, Plaintiff's shifts were reduced to only one day per week. (*Id.* at ¶ 17).

In July 2012 Plaintiff provided her managers at Golden Corral, including General Manager Mike Sisk, with a note from her neurologist stating that she was unable to work night shifts due to her disability. (*Id.* at ¶18). Despite her neurologist's note, Sisk primarily gave Plaintiff night shifts and an additional server was hired to cover day shifts. (*Id.* at ¶23) Since July 2012, Plaintiff has submitted multiple requests for the accommodation of only working day shifts, but still has not been granted them (*Id.* at ¶¶24, 25). Plaintiff believed the reduction in hours was in retaliation for her request to work day shifts, and filed an EEOC charge to that extent on March 13, 2013. (*Id.* at ¶30).

Plaintiff began to work at a law firm part-time as a source of additional income in January 2015, while continuing to work at Golden Corral on the weekends. (*Id.* at ¶31). However, she quit that job the next month and returned to working only at Golden Corral because she was told she would receive more hours there. (*Id.* at ¶¶32, 33). Those additional hours never materialized, so Plaintiff began accepting shifts from other servers. (*Id.* at ¶35). However, Sisk refused to allow her to work others' shifts, even though other servers were

---

[1] Defendant Platinum Corral, LLC does business as "Golden Corral." Subsequent briefings

commonly permitted to do so. (*Id*. at ¶36). In additional to the limitation on the number of days and shifts she could work, Sisk also began to release Plaintiff from work shortly after her shift began. (*Id*. at ¶37). Plaintiff continues to work only weekend shifts even though she has told management she is available to work any day during the week. (*Id*. at ¶38).

On February 13, 2013, Sisk issued a write-up to Plaintiff after a customer allegedly complained about her service, even though that customer had left her a large tip. (*Id*. at ¶40). Sisk issued another write-up four days later for another alleged customer complaint. (*Id*. at ¶41). After the second write-up, Sisk suspended Plaintiff from work for one day as a disciplinary action. (*Id*. at ¶43). When Plaintiff asked for a copy of the write-ups, Sisk insinuated that she was asking for them so that she could take them to the lawyer for whom she had worked.[2] (*Id*. at ¶44). When she actually received them, she noticed that several portions had been scratched out. (*Id*. at ¶45).

Plaintiff is asserting two causes of action stemming from the alleged misconduct. First, she asserts a claim for ADA discrimination arising from Defendant's refusal to provide her with the reasonable accommodation of working day shifts. Second, she puts forth an ADA retaliation claim that her hours were reduced and a one-day suspension given as a result of her seeking a reasonable accommodation for her disability. Defendant has filed a motion to dismiss pursuant to Rule 12(b)(1), arguing that this controversy is governed by a binding arbitration agreement that denies this Court jurisdiction.

II. **Standard of Review**

---

[2] Plaintiff's timeline becomes muddled here. The write-ups allegedly occurred in 2013, but she began working at the law firm in January 2015. Therefore, it is not clear how Sisk, in 2013, could be referencing conduct that had not yet occurred. Perhaps Plaintiff has confused her dates or perhaps Sisk was referencing a prior legal employer not mentioned in Plaintiff's complaint.

The parties disagree as to whether Defendant's motion is properly adjudicated at the motion to dismiss stage rather than at summary judgment. Plaintiff asserts that Defendant's motion cannot be heard as a motion to dismiss because Defendant's argument relies on documents outside of the pleadings, namely the Agreement attached to the motion to dismiss. (*See* dkt. 10 at 1).

Plaintiff's argument is incorrect. The applicability of an arbitration agreement is a question of jurisdiction. *See Huntington Alloys, Inc. v. United Steelworkers of Am.*, 623 F.2d 335, 338 (4th Cir. 1980); 9 U.S.C. § 4 ("A party aggrieved by the alleged failure . . . to arbitrate under a written agreement for arbitration may petition any United States district court which, *save for the agreement, would have had jurisdiction under title 28* . . . ." (emphasis added)). Materials outside of the pleadings may be considered on motions to dismiss for lack of jurisdiction. *See Blitz v. Napolitano,* 700 F.3d 733, 736 n.3 (4th Cir. 2012) (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)). Other courts have adopted similar reasoning in the context of arbitration disputes. *See, e.g. Lomax v. Weinstock, Friedman & Friedman, P.A.*, No. CIV. CCB-13-1442, 2014 WL 176779, at *2 (D. Md. Jan. 15, 2014), *aff'd sub nom. Lomax v. Weinstock, Friedman & Friedman*, *P.A.*, 583 F. App'x 100 (4th Cir. 2014); *Joyner v. GE Healthcare*, No. 4:08-2563-TLW-TER, 2009 WL 3063040, at *2 (D.S.C. Sept. 18, 2009).

Attacks on subject matter jurisdiction under Rule 12(b)(1) are categorized as either "facial" or "factual." A facial challenge is one which argues that "the complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A factual challenge is one in which it is "contended that the jurisdictional allegations of the complaint were not true." *Id*. Here, the challenge is factual because it requires evaluation of a document extrinsic to the complaint itself. *See U.S. ex rel. TBI Investments, Inc.*

4

*v. BrooAlexa, LLC*, 119 F. Supp. 3d 512, 523–24 (S.D. W. Va. 2015). For factual attacks, courts apply the summary judgment standard in evaluating the motion and "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999); *Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 769.

### III. Discussion

The controversy at this stage is whether Plaintiff signed a valid and enforceable arbitration agreement that would deprive this Court of jurisdiction to hear the case. Generally, the FAA holds that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "Congress enacted the FAA in 1925 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.'" *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 712 (4th Cir. 2015) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). "The FAA manifests an 'emphatic federal policy in favor of arbitral dispute resolution,' and requires that courts 'rigorously enforce agreements to arbitrate.'" *Dillon*, 787 F.3d at 712 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985), and *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

5

Arbitration agreements apply with equal force in the ADA context. In *Gilmer v. Interstate/Johnson Lane Corp.*, the Court held that statutory claims are subject to arbitration "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." 500 U.S. at 26. While Gilmer involved arbitration under the Age Discrimination in Employment Act ("ADEA"), subsequent cases have extended its logic to the ADA. *See Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir. 1996); *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141 (1st Cir. 1998). The language of the ADA, rather than evincing an "inherent conflict" with arbitration of disputes, actually expressly permits the arbitration of disputes. 42 U.S.C. § 12212 ("Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under this chapter."); *see Gilmer*, 500 U.S. at 26 (stating that Congress's intent to prevent waiver of judicial forum can be found "in the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the [statute's] underlying purposes"). Courts in the Fourth Circuit routinely enforce arbitration agreements in suits alleging statutory claims under the ADA. *See, e.g. Harvey v. Darden Rest., Inc.*, No. 1:14CV258, 2015 WL 1474946, at *2 (M.D.N.C. Mar. 31, 2015), *report and recommendation adopted,* No. 1:14CV258, 2015 WL 2381176 (M.D.N.C. May 18, 2015).

In the Fourth Circuit, the "[a]pplication of the FAA requires demonstration of four elements: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (internal quotation marks omitted).

6

Defendant asserts that Plaintiff is bound to arbitrate under the language of the Agreement which reads: "[A]ll claims related to [Plaintiff's] recruitment, employment with, or termination from the Company shall be deemed waived unless submitted to final and binding arbitration in accordance with the rules of the arbitration provider." (Dkt. 6 at 2; dkt. 6-1). The Agreement further provides that "in the event that either [party] seeks relief in a court of competent jurisdiction by a dispute covered by Agreement, the other may, at any time within 60 days of the service of the complaint, require the dispute to be arbitrated, and that the decision and award of the arbitrator shall be final binding, and enforceable in the courts." (*Id.*)

The only issue in contention is whether the Agreement is valid and enforceable. Plaintiff does not contest that she signed the Agreement, that the Agreement purports to apply to their dispute, or any of the other elements under the Fourth Circuit's formulation in *Galloway*. Instead, Plaintiff raises several specific objections to the validity of the Agreement. Plaintiff argues the agreement in unenforceable because, according to the terms of the Agreement and Defendant's arbitration policy (the "Policy"), she would have been forced to arbitrate her dispute regardless of whether she signed the Agreement. Plaintiff also argues that the Agreement is unenforceable because it is missing material terms. Finally, Plaintiff claims that the Agreement lacks consideration. Plaintiff's various objections are addressed in turn.

### a. The Agreement Was Voluntary

Plaintiff brings several objections related to the voluntariness of the Agreement. Because both the Policy and the Agreement state that disputes are subject to arbitration regardless of the presence of a signed arbitration agreement, Plaintiff argues that the Agreement has no legal effect. Similarly, Plaintiff argues that she could not have knowingly agreed to arbitration when she was required to undergo arbitration regardless of whether she signed the Agreement. Finally,

7

Plaintiff argues that the unequal bargaining power between the parties means she could not have voluntarily agreed to arbitration.

Plaintiff's argument that the Agreement would have applied even absent her signing of the document does not advance her cause. The clause in the Agreement stating that Plaintiff's "employment will nevertheless remain at all times subject to and conditioned upon your participation in this arbitration procedure regardless of whether you sign a copy of the form" is an enforceable term. Such a clause is valid because the FAA only requires a "writing," but not necessarily a signed contract. *See MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 248–49 (4th Cir. 2001); *Krusch v. TAMKO Bldg. Prod., Inc.*, 34 F. Supp. 3d 584, 589 (M.D.N.C. 2014) ("Arbitration agreements must be in writing, 9 U.S.C. § 2, but they need not be signed to be enforceable."). Assent to an arbitration agreement in the absence of a signed document may be manifested by an employee beginning or continuing to work for the employer, knowing that they have implemented a binding arbitration policy. *Phillips v. Mazyck*, 273 Va. 630, 636, 643 S.E.2d 172, 175 (2007) ("We ascertain whether a party assented to the terms of a contract from that party's words or acts . . . ."); s*ee also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369–70; (11th Cir. 2005) ("[T]he employees' acceptance was by continuing their employment and was not in writing. . . ."). The Agreement, therefore, is enforceable as written. Further, because Plaintiff has actually signed the Agreement, there is no doubt of her intent to assent to its terms.

Even if Plaintiff were correct that challenged term somehow makes the Agreement null and void, she would still be bound to arbitration by the terms of the Policy. Arbitration policies similar to Defendant's — where a party agrees to arbitration without executing a signed agreement — are routinely upheld so long as they meet the normal requirements of a contract.

*See Caley* 428 F.3d at 1369–70 ("[T]he overwhelming weight of authority supports the view that no signature is required to meet the FAA's 'written' requirement."). Further, whether an unsigned arbitration policy binds the parties "is a question of the parties' intent." *Perez v. Lemarroy*, 592 F. Supp. 2d 924, 930–31 (S.D. Tex. 2008). Here, the Agreement serves to evince Plaintiff's clear intent to be bound to submit her claims to arbitration. Further, the potentially duplicative ways of manifesting assent does not cause them both to become invalidated. *See, e.g.*, *Brookins v. Superior Mgmt. Grp., Inc.*, No. 13-2051-EFM-JPO, 2013 WL 5819706, at *3 (D. Kan. Oct. 29, 2013) ("Here, Brookins accepted Superior's offer both by signing the policy and by continuing as an at-will employee of Superior."). The presence of the Agreement enhances, rather than detracts from, the enforceability of the Policy.

Plaintiff's also invokes a heighted "knowing" standard for the voluntariness of arbitration agreements. *See Penn v. Ryan's Family Steakhouses, Inc.*, 95 F. Supp. 2d 940, 952–53 (N.D. Ind. 2000), *aff'd and remanded sub nom. Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753 (7th Cir. 2001) ("The Ninth Circuit has taken a stance on the waiver issue in this context, expressly holding that when an employee enters into an arbitration agreement, that waiver of a judicial forum must be 'knowing.'" (citing *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1155 (9th Cir. 1998))). However, Plaintiff presents no authority to suggest that the standard has been adopted in the Fourth Circuit. Further, the concern in line of Ninth Circuit cases cited in *Penn* was the lack of an *express* agreement, which is not a concern here where a signed arbitration agreement exists. *See Kummetz*, 152 F.3d at 1155; *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir.1997) ("Any bargain to waive the right to a judicial forum for civil rights claims, including those covered by the ADA, in exchange for employment or continued employment must at the least be express: the choice must be explicitly presented to the employee

9

and the employee must explicitly agree to waive the specific right in question."). Even if the standard were applicable, it is difficult to fathom how Plaintiff's signing of an agreement which purports to cover the exact controversy here does not satisfy the "knowing" standard.

Plaintiff's argument regarding her unequal bargaining power is similarly unpersuasive. As an initial matter, Plaintiff does not specify the legal effect of the alleged unequal bargaining power. The Court may surmise, from the rest of Plaintiff's argument, that the unequal bargaining position somehow rendered the contract unenforceable, possibly under a theory of unconscionability. The Court need not proffer a full unconscionability analysis here because Plaintiff did not properly raise this ground. In any event, it will suffice to say that there is not sufficient evidence before the Court for it to rule the Agreement was unconscionable. *See Piney Run Preservation Ass'n*, 523 F.3d at 459 (holding that a plaintiff "bears the burden of proving that subject-matter exists" in a 12(b)(1) motion). To the extent Plaintiff argues that mere unequal bargaining power eliminated any voluntariness of her signing of the Agreement, her claim is legally insufficient. "Simply because an employer and an employee do not stand on equal footing with respect to bargaining power does not magically transform an employment agreement into an adhesion contract." *Zaklit v. Global Linguist Solutions*, LLC, 53 F.Supp.3d 835, 845–46 (E.D. Va. 2014).

### b. The Agreement is Not Missing Material Terms

Plaintiff also offers the argument that the arbitration agreement is unenforceable because it is incomplete. Plaintiff claims it is missing material terms such as "a full description of terms regarding claims to be covered and excluded from arbitration, terms regarding notice of all claims, terms regarding arbitration procedures, and terms regarding payment of fees and expenses." (Dkt. 10 at 9).

10

Generally, it is true that a contract may be unenforceable if it is missing material terms. *See Saza, Inc. v. Zota*, No. 3:11-CV-363, 2012 WL 527370, at *5 (E.D. Va. Feb. 16, 2012) ("Essentially, a district court must conclude that an agreement has been reached on all the material terms, otherwise, the purported agreement is unenforceable." (citing *Ozyagcila v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983))). Here, however, Plaintiff has merely offered the legal conclusion that the contract is missing material terms without explaining how the terms were material or even, in some cases, how the terms were missing. For example, the procedures to govern arbitration are not considered a material term in arbitration agreements.³ *See Davis v. ECPI Coll. of Tech., L.C.*, 227 F. App'x 250, 253 (4th Cir. 2007); *Dockser v. Schwartzberg*, 433 F.3d 421, 426 (4th Cir. 2006). Arbitration fees and expenses are also not material terms required for a valid arbitration agreement. *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 306 (4th Cir. 2001) ("[F]ailure of an arbitration agreement to address costs and fees does not alone make the agreement unenforceable." (citing *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 522 (2000))).

Turning to the missing "description of terms regarding claims to be covered and excluded from arbitration," Plaintiff has failed to present a compelling argument that these terms are even missing. (*See* dkt. 10 at 9). The Agreement explicitly applies to "all claims relating to your recruitment, employment with, or termination of employment" and further specifies numerous types statutory claims to which it applies. (Dkt. 6-1). Notably, the Agreement specifically

---

³ It is not clear exactly what Plaintiff was referencing when she stated that "terms regarding notice of all claims" were also missing. (*See* dkt. 10 at 9). However, it is likely the notice terms could be considered arbitration "procedures" and thus nonmaterial. Alternatively, it is unlikely the notice term would be considered material when similar concerns, such as arbitration procedures and fees, are not. Regardless, the Court will not hold the Agreement unenforceable on the basis of an alleged missing term which is vaguely referenced but not adequately argued.

11

"covers all matters directly or indirectly related to your recruitment, employment or termination of employment . . . including, but not limited to, allegations of violations of . . . the Americans with Disabilities Act of 1990 ('ADA')." (*Id.*) Plaintiff's conclusory statement that specific descriptions are missing flies in the face of the plain language of the Agreement.

Plaintiff also argues that that the Agreement is unenforceable because it does not expressly incorporate the terms of the Policy. Again, Plaintiff does not fully explain the legal significance of this contention, but the Court will assume Plaintiff is arguing that the Agreement cannot be complete without incorporating some of the terms found only in the Policy. Without Plaintiff specifying which terms found only in the Policy render the Agreement unenforceable, it is impossible for the Court to fully evaluate this argument. However, to the extent that Plaintiff is arguing that the Policy contains arbitration procedures, notice, and fees not contained in the Agreement, that argument fails for the reasons discussed earlier.

### c. The Agreement did not lack consideration

Plaintiff's third argument — that the Agreement lacks consideration — is without merit. The law in Virginia is clear that a mutual agreement to arbitrate constitutes sufficient consideration for both parties. *See O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) ("A mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement."); *Price v. Taylor*, 251 Va. 82, 85, 466 S.E.2d 87, 88 (1996) ("[I]t is well established that mutual promises in a contract constitute valuable consideration."); *see also Tarpley v. Livings*, No. 4:16-CV-00021, 2016 WL 4537751, at *4 (W.D. Va. Aug. 30, 2016); *McNeil v. Haley S., Inc.*, No. 3:10CV192, 2010 WL 3670547, at *6 (E.D. Va. Sept. 13, 2010); *Louis v. Geneva Enterprises, Inc.*, 128 F. Supp. 2d 912, 915 (E.D. Va. 2000).

Plaintiff, however, states that the Agreement did not mutually bind both parties to arbitration. (*See* dkt. 10 at 10–11). This argument is frivolous, as Plaintiff cites no language in support of her claim and ignores the clear language of the Agreement indicating that the promise is mutual. Specifically, the Agreement states that: (1) there are "mutual promises," (2) "in the event *either party* files . . . a court action . . . the plaintiff in such action agrees not to request . . . its right to trial by jury," (3) "*you and the Company* . . . agree that all claims . . . shall be deemed waived unless submitted to final and binding arbitration,"[4] (4) "*if either party* seeks relief in a court . . . *the other* may . . . require the dispute to be arbitrated." (Dkt. 6-1) (emphasis added).

The Court, therefore, holds that the parties were subject to a binding arbitration agreement which covered the scope of the present controversy. Plaintiff's various arguments regarding the unenforceability of the signed Agreement are unpersuasive.

### d. The Correct Remedy is Dismissal

Given the conclusion that the parties were bound by an arbitration agreement, the Court must now turn to the proper remedy. Defendant urges that the entire case be dismissed and ordered into arbitration, rather than just stayed pending the resolution of arbitration.

The FAA provides two explicit remedies for cases such as this. Under Section 3, a Court should "stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. Under Section 4, a Court may "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. However, the Fourth Circuit has also stated that "dismissal is a proper remedy when all issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001);

---

[4] This language appears twice in the Agreement.

*see also Lomax*, 2014 WL 176779 at *2 ("Courts have found it proper to dismiss claims subject to arbitration agreements under both Rule 12(b)(1) and Rule 12(b)(6).").

Here, Plaintiff's only claim is under the ADA and related to her employment. (*See* dkt. 1). The Agreement specifically covers ADA claims relating to employment such as this. (*See* dkt. 6-1). All of Plaintiff's claims are thus arbitrable in this suit. Under *Choice Hotels*, therefore, dismissal is a proper remedy. The Court will follow the rule established in *Choice Hotels* and dismiss Plaintiff's suit under Rule 12(b)(1). Further, the Court will order the parties to proceed to arbitration pursuant to the terms of their agreement.

## IV.  Conclusion

The uncontroverted facts in this case show that Plaintiff and Defendant entered into an agreement to arbitrate any disputes relating to Plaintiff's employment, including any disputes under the ADA. Plaintiff's various arguments against the enforceability of the agreement are unpersuasive, and the Court holds that the Agreement was valid and enforceable. Contrary to the terms of the Agreement, Plaintiff filed a lawsuit under the ADA that related to her employment without first arbitrating the dispute. This Court, therefore, lacks jurisdiction to hear this controversy under the terms of the parties' Agreement and the FAA. The complaint will be dismissed, and the parties will be ordered to submit their dispute to arbitration. An appropriate Order will issue.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this __16th__ day of February, 2017.

                                                                           _____
                                                                           NORMAN K. MOON
                                                                           UNITED STATES DISTRICT JUDGE